IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:17-CV-010-DCK

| | |
|---|---|
| JAMES A. HOLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 10) and the "Commissioner's Motion For Summary Judgment" (Document No. 13). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that "Plaintiff's Motion For Summary Judgment" (Document No. 10) be <u>denied</u>; that the "Commissioner's Motion For Summary Judgment" (Document No. 13) be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

**I.     BACKGROUND**

Plaintiff James A. Holman ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). In March 2013, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, <u>and</u> for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning July 1, 2012, which was later amended to July 31,

2014. (Transcript of the Record of Proceedings ("Tr.") 18, 214, 221). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on May 3, 2013, and again after reconsideration on August 5, 2013. (Tr. 18, 134, 142). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you are disabled because of back problems, a cracked spine, vision problems in your right eye, severe vertigo, liver problems, high cholesterol, nausea, and dizziness.
> The medical evidence shows that your condition is not severe enough to be considered disabling.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.
> It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 142).

Plaintiff filed a timely written request for a hearing on or about August 19, 2013. (Tr. 18, 160). On June 8, 2015, Plaintiff appeared and testified at a hearing before Administrative Law Judge Scott C. Firestone (the "ALJ"). (Tr. 18, 33-71). In addition, Katharine Bradford, a vocational expert ("VE"), and David R. Paletta, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on September 10, 2015, denying Plaintiff's claim. (Tr. 15-28). On November 6, 2015, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on December 6, 2016. (Tr. 1-3, 7). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking "judicial review by this Court and the entry of a judgment for such relief as may be proper, including costs" was filed in this Court on January 10, 2017.

(Document No. 1, p.2). On May 2, 2017, the parties consented to Magistrate Judge jurisdiction, and this case was reassigned. (Document No. 9)

"Plaintiff's Motion For Summary Judgment" (Document No. 10) and "Plaintiff's Brief In Support Of Motion For Summary Judgment" (Document No. 10-1) were filed May18, 2017; and the "Commissioner's Motion For Summary Judgment" (Document No. 13) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 14) were filed August 14, 2017. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e).

On February 7, 2018, the undersigned scheduled this matter for a hearing on March 28, 2018, and directed the parties to make a good faith attempt to resolve or narrow the issues. (Document No. 15). The parties filed a "Joint Notice" (Document No. 16) on March 9, 2018, reporting that their attempt to resolve or narrow the issues had failed. The pending motions are now ripe for disposition.

After further review of this case, the undersigned has decided to cancel the scheduled hearing and issue this decision.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is

supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between July 31, 2014, and the date last insured, March 31, 2016.[1] (Tr. 18). To establish entitlement to benefits, Plaintiff has the burden

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

of proving that he was disabled within the meaning of the Social Security Act. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. <u>Pass</u>, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 27).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since July 31, 2014, his amended disability onset date. (Tr. 20). At the second step, the ALJ found

5

that "degenerative disc disease of the lumbar spine with spondylolisthesis, Meniere's Disease, and loss of visual acuity in the right eye" were severe impairments.[2] Id.

At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21). The ALJ noted that Plaintiff did not allege that his impairments met or equaled any medical listing. (Tr. 21) (citing Tr. 281).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> he can occasionally lift twenty pounds, frequently lift ten pounds, and carry the same amount; sit, stand, and walk for a total of six out of eight hours in a day; and push or pull as much as he can lift and carry; except that the claimant can frequently operate right and left foot controls; is unlimited in hand controls; can frequently reach overhead, and frequently reach in all other directions; is unlimited in his ability to handle, finger, and feel; can frequently climb stairs and ramps; can occasionally climb ropes, ladders, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; is unlimited in his ability to communicate; must avoid ordinary hazards in the work place; must never be exposed to unprotected heights or moving mechanical parts; can frequently operate a motor vehicle; can frequently be exposed to weather, humidity, wetness, dusts, odors, fumes, and pulmonary irritants not at concentrated levels; can tolerate frequent exposure to extreme cold, extreme heat, vibrations, and very loud noise; is unlimited in his ability to remember and carry out instructions, use judgment, and respond appropriately to supervisors, coworkers, and the general public; is unlimited in his ability to deal with changes in the work setting; and can perform simple, routine, repetitive tasks.

(Tr. 22). In making his finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a debarker, lumber handler, sawmill worker, and logger. (Tr. 26). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 27). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included an assembler, inspector, or grader/sorter. (Tr. 27); see also (Tr. 62-69). The ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between July 1, 2012, and the date of his decision, September 10, 2015. (Tr. 28).

Plaintiff contends that the decisions of the ALJ and the Appeals Council are not based on substantial evidence. (Document No. 10-1, p.3). On appeal to this Court, Plaintiff makes the following assignments of error: (1) the ALJ failed to properly evaluate Plaintiff's vision limitations; (2) the ALJ failed to properly evaluate Plaintiff's vertigo; (3) the ALJ failed to properly evaluate Plaintiff's subjective allegations of pain; and (4) the ALJ failed to properly evaluate the opinions given by Plaintiff's treating medical providers. (Document No. 10-1, p.5). The undersigned will discuss each of these contentions in turn.

**A.  Vision Limitations**

In the first assignment of error, Plaintiff argues that the ALJ failed to properly evaluate allegations and opinions that Plaintiff had difficulty with his vision. (Document No. 10-1, pp.5-8). Plaintiff notes that he had a corneal transplant, possible rotatory nystagmus, rapid eye movement, and blurry vision that made reading difficult. (Document No. 10-1, p.5) (citing Tr. 56,

7

59, 98, 107, 117, 127, 243, 291, 376). Plaintiff then acknowledges that the ALJ found Plaintiff's loss of visual acuity in his right eye to be a severe impairment, but argues that the ALJ did not incorporate any limitations in the RFC based on this impairment. (Document No. 10-1, pp.5-6) citing (Tr. 20, 22). Plaintiff also suggests that his vision would preclude him from performing the jobs identified by the VE and that without proper limitations identified by the ALJ, the VE's identification of jobs was in error. (Document No. 10-1, pp.6-8).

In response, Defendant argues that the ALJ properly included limitations in the RFC that addressed Plaintiff's vision limitations, including: "exposure to workplace hazards, unprotected heights, moving mechanical parts, and operation of a motor vehicle." (Document No. 14, p.5) (citing Tr. 22). Defendant notes that the ALJ opined: " the medical records showing a right eye injury and surgery justify environmental and driving limitations." Id. (quoting Tr. 23).

Defendant further argues that Plaintiff never identified any specific limitation that was supported by the evidence that the ALJ failed to include in the RFC. (Document No. 14, p.5). Moreover, Defendant contends that the decision reflects that the ALJ properly considered the evidence. Id.

> The ALJ noted, for instance, that the record documented post-surgical corneal changes (Tr. 24, 375), but contrasted this with the fact that eye examinations consistently revealed "normal pupil reaction, normal extra-ocular motion, and normal lids with good closure" (Tr. 24, 350, 368, 373). The ALJ noted that in spite of his eye pathologies, Mr. Rogers retained the ability to fish, work on a car with his son, drive short distances, and babysit children, among other tasks (Tr. 25, 46-47, 51-52, 53). The ALJ thus considered Mr. Holman's eye pathology and relevant examination findings and examined how they affected Mr. Holman's activities of daily living. The ALJ's analysis was reasonable. Mr. Holman's ability to drive and work on cars indicates his visual acuity deficits are not as significant as he alleged or as were opined by the state agency medical experts.

(Document No. 14, pp.5-6).

The undersigned finds Defendant's arguments most persuasive. Moreover, these arguments and the ALJ's decision are consistent with Plaintiff's testimony about driving and reading road signs, and his ability to see nuts, bolts, and everything he needed to see, while he worked on cars. (Tr. 59-60); (Tr. 21-23); see also (Tr. 25) (citing Tr. 450) (Dr. Califf noted: "No vision problems" and "No dizziness). When answering a question about focusing with his eye while working on cars, Plaintiff stated: "[w]ell, it didn't really cause a serious problem. . . . Yes. My good eye done fine." (Tr. 61).

**B.     Plaintiff's Vertigo**

Next, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's vertigo. (Document No. 10-1, pp.8-9). Plaintiff goes on to describe his alleged symptoms and supporting evidence, and then concludes that the severity of his vertigo "vastly exceeds limitations found by the ALJ." (Document No. 10-1, pp.9-10). Plaintiff contends that "[b]y failing to include all resulting limitations, the ALJ did not take into account all specific limitations when crafting the hypothetical to the vocational expert." Id. (citing Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989)).

In response, Defendant contends that the ALJ considered all the evidence Plaintiff relies on and concluded it did not support his alleged limitations. (Document No. 14, pp.6-7). Defendant further contends that the ALJ's decision shows that:

> the ALJ noted that Mr. Holman was receiving treatment for vertigo in 2013 and that his condition was improving and his dose of Meclazine was being lowered (Tr. 23, 327). The ALJ further noted that Mr. Holman had two appointments with a neurologist in late 2014 but had no further treatment for vertigo by a neurologist (Tr. 23, 373-76). The treating neurologist recommended a low dose of valium, but Mr. Holman declined to receive that treatment (Tr. 23, 374). The treating neurologist concluded that his treatment options were accordingly limited, and opined that he "would suggest that he

> not work any potentially hazardous jobs," which is entirely consistent with the ALJ's RFC finding (Tr. 373-74). Having considered the objective evidence and treatment regimens used by Mr. Holman, the ALJ noted that he retained the ability to engage in a wide variety of activities that were not indicative of significant functional limitation secondary to vertigo.

(Document No. 14, pp.6-7).

Defendant notes that the ALJ specifically accounted for Plaintiff's vertigo through limitations included in the RFC. (Document No. 14, p.7) (citing Tr. 24). That portion of the ALJ's decision is instructive regarding the alleged errors.

> The signs of intermittent dizziness indicate a need for climbing and environmental limitations. Taking the evidence in the light most favorable to the claimant, the undersigned also determined that the frequent vertigo and constant pain would erode the claimant's ability to perform complex or detailed work, limiting him to simple, routine, repetitive tasks. The signs of back pain and paresthesia confirm limitations in lifting, carrying, reaching, pushing, pulling, operating foot controls, and performing postural changes. However, the intermittent nature and "mild" symptoms do not support the degree of limitation alleged.
>
> Many of the clinical signs and physician observations show that the claimant is capable of performing more activities. On March 22, 2013, the claimant reported to care providers at Watauga Medical Center that the dizziness was "getting a little better" and the episodes were further apart (Ex. 5F/4, 6). In May of 2013, the claimant reported no musculoskeletal symptoms and treating physicians noted normal gait and ambulation (Ex. 6F/3, 8; 8F/4; 9F/2). Physical eye examinations throughout the affected period included normal pupil reaction, normal extra-ocular motion, and normal lids with good closure (Ex. 6F/3, 8; 8F/4; 9F/2).

(Tr. 24); see also (Tr. 22).

Defendant concludes that the ALJ considered the evidence of Plaintiff's vertigo, and that his analysis and characterization of the record was reasonable. Defendant concludes that Plaintiff is not really arguing that the ALJ erred in considering the evidence, but that the Court should re-weigh the evidence. (Document No. 14, p.7) (citing Craig, 76 F.3d at 589).

The undersigned again finds Defendant's argument to be persuasive and an accurate summation of the ALJ's work here.

**C.      Plaintiff's Allegations of Pain**

Plaintiff also argues that the ALJ erred in his evaluation of Plaintiff's subjective allegations of pain. (Document No. 10-1, pp.10-15). Plaintiff seems to base this argument on the ALJ's determination that the Plaintiff's "…statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Document No. 10-1, p.13) (quoting Tr. 23). Plaintiff also recites evidence in the record he suggests the ALJ failed to consider. (Document No. 10-1, pp.11-15).

In response, Defendant argues that the ALJ considered and acknowledged Plaintiff's allegations of severe back pain. (Document No. 14, p.7) (citing Tr. 22-24). Defendant further argues:

> The ALJ then discussed Mr. Holman's treatment regimen and the evidence of its efficacy. The ALJ acknowledged that one of the treatment modalities recommended to Mr. Holman was lumbar surgery (Tr. 23, 449), but noted there was evidence that more conservative treatment modalities were effective. For instance, the ALJ noted that Mr. Holman reported to physical therapists in December that his **back felt better after physical therapy and that he had decreased pain** (Tr. 24 citing 416, 431). The ALJ also noted that Mr. Holman indicated that **his "pain is bad but I can manage without taking painkillers"** (Tr. 24, 424) and that he does not do his physical therapy exercises **when "he has no pain at all** (Tr. 24, 429).
>
> Finally, the ALJ noted that medical records indicated Mr. Holman "remain[ed] physically active at baseline with walking and yard work" in July 2014 (Tr. 25, 375) and was able to work on a car with his son, drive, fish, help with light chores, go grocery shopping, and babysit (Tr. 25).
>
> The ALJ thus considered the imaging studies, the examination findings, Mr. Holman's report that his pain was not severe enough

> that he needed to take pain medication or perform physical therapy
> exercises, and his robust activities of daily living.

(Document No. 14, p.8) (emphasis added).

Defendant concludes that the ALJ's consideration of Plaintiff's pain was adequate, and that Plaintiff does not identify any errors in the analysis, "he merely cites evidence the ALJ considered and asks this Court to re-weigh it." Id.

The undersigned finds no error in the ALJ's consideration of Plaintiff's pain or credibility.

**D.      Medical Opinions**

Finally, Plaintiff argues that the ALJ erred by failing to properly evaluate the opinions of Plaintiff's treating medical providers, Dr. James Califf and Dr. Melinda Wonsick. (Document No. 10-1, pp.15-17). Plaintiff disagrees with the ALJ giving their opinions "little weight," and "some weight," respectively. (Document No. 10-1, p.15). Plaintiff considers the ALJ's evaluation of Dr. Califf's opinion to be "especially troubling."(Document No. 10-1, p.16).

In response, Defendant asserts that the ALJ's consideration of these treating opinions was appropriate. (Document No. 14, pp.9-10). Defendant contends it would have been error for the ALJ to afford any greater weight to Dr. Califf's opinion. (Document No. 14, p.9). Defendant further notes that the ALJ explained why he gave Dr. Wonsick's opinion limited weight.

The undersigned again finds Defendant's arguments persuasive, and the ALJ's decision more than adequate. The following excerpts of the decision indicate that contrary to Plaintiff's argument, the ALJ properly evaluated the treating medical provider opinions.

> On February 24, 2015, Dr. Califf observed that the claimant had full range of motion and normal alignment in the cervical spine, and normal alignment with no tenderness in the thoracic spine (Ex. 12F/ 1). Dr. Califf did not note any vision problems or dizziness in his single visit and examination (Ex. 12F/3). These normal clinical signs and admissions to treatment providers do not support the alleged extent of the claimant's limitations. . . .

> On September 24, 2014, Dr. Wonsick found the claimant unable to run machinery or drive due to chronic vertigo (Ex. 10F/3). The undersigned gives this opinion some weight, as Dr. Wonsick is a treating physician familiar with the claimant's case (Ex. 10F). However, the claimant testified at the hearing that he drives for short distances and is comfortable working on cars (HR). The undersigned agreed that the claimant's visual acuity and dizziness justify environmental limitations, but not the total restriction suggested by Dr. Wonsick.
>
> On February 24, 2015, Dr. Califf advised that the claimant is currently unable to work and that, with or without surgery, the claimant would be out of work "at least 12 months" (Ex. 12F/2). The undersigned gives this opinion little weight. Even though Dr. Califf is a treating physician, **he only saw the claimant for one appointment and a limited examination** (Ex. 12F). The claimant's physical therapy sessions showed great improvement in spine pain and range of motion and the claimant admitted that he is capable of some degree of activity in the hearing (Ex. 1lF; HR). Dr. Califf's advice was also not expressed in functionally relevant terms, and the issue of total disability is reserved for the Commissioner (20 CFR 404.1527(d) and 416.927(d)).

(Tr. 25-26

Based on the foregoing, the undersigned finds no error by the ALJ requiring reversal or remand.

### IV.    CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: "Plaintiff's Motion For Summary Judgment" (Document No. 10) is **DENIED**; the "Commissioner's Motion For Summary Judgment" (Document No. 13) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: March 14, 2018

David C. Keesler
United States Magistrate Judge